Primitivo FLORES, Jr., Appellant,

v.

Alice ANAYA et al., Appellees.

No. 10863.

Court of Civil Appeals of Texas.

Austin.

July 12, 1961.

Rehearing Denied August 2, 1961.

Tom G. Oliver, Jr., San Marcos, Randle Taylor, San Antonio, for appellant.

Vernon L. Smith, Waco, for appellee.

HUGHES, Justice.

This suit was brought by Lola, Alice and their brother, Servando Anaya against Primitivo Flores, Jr., appellant, to recover damages to an automobile owned by Servando Anaya and to recover damages for personal injuries sustained by Lola and Alice Anaya as a result of a rear end collision between the Anaya car and the Flores car occurring February 20, 1960 at about 5:00 p. m. at or near the south end of a two lane one way bridge (Highway 81) crossing the San Marcos River in Hays County. Both cars were south bound.

Servando Anaya was not in his car at the time of the collision. His sister Lola was driving the car and sister Alice was a passenger at such time.

Trial was to a jury. The verdict was favorable to Alice Anaya and the judgment based thereon is final and no appeal has been taken from it

The verdict was also favorable to appellees except as to the following issues:

"Special Issue No. 32: Do you find from a preponderance of the evidence that prior to the collision in question Lola Anaya brought her automobile to a stop on the paved main traveled portion of the highway?

"Answer: 'Yes' or 'No.'

"We, the Jury, answer: 'Yes.'

"If you have answered the foregoing special issue 'Yes,' and only if you have so answered the same, then answer the following special issue.

"Special Issue No. 33: Do you find from a preponderance of the evidence that such act, if any, inquired about in Special Issue No. 32 was negligence?

"Answer: 'Yes' or 'No.'

"We, the Jury answer: 'Yes.'

"If you have answered the foregoing special issue 'Yes,' and only if you have so answered the same, then answer the following special issue.

"Special Issue No. 34: Do you find from a preponderance of the evidence that negligence, if any, inquired about in Special Issue No. 33 was a proximate cause of the collision in question?

"Answer: 'Yes' or 'No.'

"We, the Jury, answer: 'Yes.'"

The undisputed evidence supported the answer of the jury to Issue No. 32.

Appellees moved the Court to disregard the answers of the jury to issues 33 and 34. This motion was granted, and judgment was rendered upon the remaining issues for appellees.

The propriety of the Court's action in disregarding jury findings Nos. 33 and 34 is the sole question presented for our decision.

For a better understanding of the facts, we insert a picture of the locale of the collision which was offered in evidence by appellant:

The collision occurred at or near the end of the bridge (south end) shown in the picture, and on the side of the highway which is more prominently shown. After the collision, the cars driven by appellant and Lola came to rest just south of the end of the bridge and were facing almost north, the direction from which they had come.

The esplanade· between the north · and south bound highways is 20 feet wide. The width of the paved portion of each highway is 30 feet. Each lane of each highway is 15 feet wide. Both the esplanade and the shoulder of the south highway at and near the south end of the bridge were in good condition and could have accommodated parked cars.

It had rained the day of the collision and the highway was wet and slick. At the time of the collision, about 5:00 p. m., it was cloudy, and there was a slight mist. Lola was driving with her parking and tail lights on.

Appellant's car and Lola's car were both traveling south in the outside lane. They were in a 50 mile an hour speed zone, and neither car was speeding.

As Lola approached the bridge she was traveling about 45 miles per hour. She saw ahead of her, and visibility was good for at least a "block," that the traffic in her lane was stopped near but beyond the south end of the bridge. She gradually reduced the speed of her car until she stopped [1] some seven feet, more or less, behind the car in front of her. This car is called the Tallant car. The rear wheels of Lola's car were on the bridge.

Before stopping, Lola and her sister Alice had discussed the possibility that the traffic was stopped because a driver's license check was being conducted.

The left lane-of the south highway was clear. No cars were in it which were visible, and the only known car approaching from the rear was appellant's car, and Lola did not see it prior to the collision.

Appellant was driving within the speed zone limit and with his driving lights on. He observed Lola's car in the right hand lane as he approached the 450–500 foot bridge, but did not realize it had stopped until too late to avoid the collision. Appellant applied his brakes and turned his car to the left. The car skidded about 30 feet, its right front fender hitting the left rear fender of Lola's car. Her car was knocked forward, striking the Tallant car.

The area surrounding the site of the collision was open country, that is, it was not a well developed business or residential area.

The jury, among other findings, found that Lola "failed to drive her automobile off the right hand side of the paved portion of the highway before stopping" and that she "failed to drive her automobile off the left hand side of the paved portion of the highway before stopping," but that neither of these acts constituted negligence.

Appellant cites Secs. 93(a) and 95(a) of Art. 6701d, Vernon's Ann.Civ.St., which provide:

"Sec. 93. (a) Upon any highway outside of a business or residential district, no person shall stop, park, or

---

1. Lola testified concerning the time she had been stopped before the collision as follows:
"Q. All right. Now, Lola, how long had you been stopped before you were struck by the other automobile? A. How long?
"Q. Yes, how long after you had stopped was it before you were struck? Was it a long period of time, or a relatively short period of time, or can you tell the jury how long it was? A. No, I can't.
"Q. Had you been parked on the highway for a long time? A. No, sir."

Alice testified:
"Q. All right. Now, can you tell the jury about the crash, or the collision, and what happened at that time? A. Well, just as soon as we stopped, or were *beginning* to stop, we heard this terrible crash, and didn't know what it was, so I screamed out that the bridge was falling, because this crash happened so suddenly we didn't have time to think what it was, and when we finally knew we had been in the crash, somebody had hit us, and the car spinned around and it stopped facing an embankment on the right-hand side lane."

leave standing any vehicle, whether attended or unattended, upon the paved ..or main-traveled part of the highway when it is practical to stop, park, or so leave vehicle off such part of said highway, but in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred (200) feet in each direction upon such highway. * * *

"Sec. 95. (a) No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or directions of a police officer or traffic-control device, in any of the following places: * * *

"13. Upon any bridge or other elevated structure upon a highway or within a highway tunnel; * * *"

Both parties cite numerous cases which we have examined but do not feel are factually similar to this case to the extent that a review of them would be helpful here.

The sufficiency of the evidence to sustain the jury findings exonerating Lola from blame in not pulling off the highway to the right or to the left [2] is not questioned. Appellant however, in answer to appellee's argument that these findings left her no alternative but to stop, since there was a car stopped in front of her, contends that appellee could have switched lanes, from right lane to left lane, and driven on down the road.

There is no statute which requires a driver to change lanes. Sec. 60, Art. 6701d, provides, in part, that when a roadway has been divided into clearly marked lanes, as here, "The driver of a vehicle shall drive as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has * * * ascertained that such movement can be made with safety."

Since Lola did not desire to change lanes, there was no occasion for her to determine whether such change could have been made with safety. What Lola would have observed had she undertaken to determine if she could change lanes with safety is not clear; however, there is evidence from which it could be reasonably inferred that she would have observed appellant's approach, and in such proximity as to deter her.

Lola did nothing but what she had a right to do. She slowly stopped her car in her own lane, a stop which was "necessary to avoid conflict with other traffic," the Tallant car.

It is our opinion that Lola, in stopping as she did, acted legally, prudently and without being under any duty, legal or moral, to switch lanes and dash by a standing vehicle. It follows that she was not negligent in stopping, and that the Trial Court was correct in disregarding Issues 33 and 34.

The judgment of the Trial Court is affirmed.

Affirmed.

2. Sec. 62, Art. 6701d, prohibits driving within the so-called esplanade (left side). Appellant testified:
"Q. Now, Primitivo, do you know of any physical embodiment, or any reason why Lola in stopping could not have pulled off on the shoulder on the right-hand side of the pavement? A. I don't know. She could have pulled off to the left or to the right.

"Q. Was there anything to keep her from pulling to the right there that night, off of the pavement? A. No, sir.
"Q. All right. Was there anything to keep her from pulling to the left-hand side off of the pavement? A. No, sir.
"Q. Could you have pulled to the right-hand side off of the pavement, do you think? A. No, sir, because her car was —I think her rear wheels were still on the bridge."